# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **INTEGRITY NATIONAL CORPORATION,** | * |
| Petitioner, | * |
| v. | *    Case No.: PWG-17-160 |
| **DSS SERVICES, INC.,** | * |
| Respondent. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Petitioner Integrity National Corporation ("Integrity") has filed an application for confirmation of an arbitration award issued against Respondent DSS Services, Inc. ("DSS") on December 15, 2016. Pet., ECF No. 1. In its Answer, DSS argued that the application could not be brought by Integrity's counsel, Janice Davis, because she had previously represented DSS in related proceedings. Answer 3–4, ECF No. 9. At a telephone conference held pursuant to Fed. R. Civ. P. 16, I ordered DSS to file a Motion to Disqualify Counsel. ECF No. 20. Thereafter, DSS filed its Motion, ECF No. 21, which is fully briefed, Resp't's Mem., ECF No. 21-1; Pet'r's Opp'n, ECF No. 22; Resp't's Reply, ECF No. 24. No hearing is necessary, Loc. R. 105.6 (D. Md.). While Davis represented DSS-Integrity, LLC ("DSS-Integrity"), a joint venture between DSS and Integrity, DSS has not established that she ever represented DSS itself. I will therefore deny DSS's Motion to Disqualify, and Integrity may proceed by filing a Motion to Confirm Arbitration Award.

## Background

The Small Businesses Administration's Business Development Program (also known as the "8(a) program") provides assistance to firms owned and controlled by socially and economically disadvantaged individuals. 15 U.S.C. § 637(a). Among the forms of assistance available under the program, participating firms can form joint ventures with mentor firms for the purpose of jointly competing for federal government contracts. 13 C.F.R. § 124.520. In January 2012, Integrity—a janitorial services contractor and a "graduate" of the 8(a) program— agreed to partner with DSS—a general construction company and participant in the program— and form a joint venture for the purpose of participating in the 8(a) program's mentor-protégé program. Hines Decl. ¶ 4, Pet'r's Opp'n Ex. 2, ECF No. 22-1. A Joint Venture Agreement signed by the two company's principals established DSS-Integrity as the corporate manifestation of the joint venture and assigned 51% of profits and losses from the venture to DSS and 49% to Integrity. Joint Venture Agreement 1–2, Resp't's Mot. Ex., ECF No. 21-4.[1] Pursuant to the Agreement, the Parties secured several government contracts. Hines Decl. ¶¶ 6, 12, 19, 22.

In August or September 2013, DSS-Integrity submitted a bid in response to a solicitation for proposals issued by the U.S. Department of Defense, Enterprise Facilities and Construction Division, Washington Headquarters Acquisition Directorate for clinical custodial services to be provided at the DiLorenzo TRICARE Health Clinic. Resp't's Mot. ¶ 5. DSS-Integrity failed to secure the contract and submitted a bid protest to the Government Accountability Office (GAO). *Id.* ¶ 7; Hines Decl. ¶ 9. Davis, who has represented Integrity in various legal matters over the

---

[1] Citations to the Joint Venture Agreement refer to CM/ECF page numbers. The Parties signed this agreement in 2014. *Id.* It is unclear whether an earlier version of the Agreement exists, but the precise date of the joint venture's formation is immaterial to the disqualification issue because DSS admits that Davis represented DSS-Integrity, LLC during the 2013 proceedings that are at the heart of its Motion. Respt't's Mot. ¶ 8.

past seventeen years, represented DSS-Integrity in the bid protest. Hines Decl. ¶¶ 2, 9; Davis Decl. ¶ 2, 5, Resp't's Opp'n Ex. 1, ECF No. 22-1. The arbitration that is the subject of this case dealt with another unrelated prime-sub contract between the two companies that Integrity alleges DSS breached. Pet. ¶¶ 6–17.

### Standard of Review

As explained in *Jarallah v. Thompson*, 123 F. Supp. 3d 719 (D. Md. 2015):

> A motion to disqualify is a serious matter, which must be decided on a case-by-case basis. This is so because two significant interests are implicated by a disqualification motion: the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community. Nevertheless, the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings. Thus, this court must not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification.

*Id.* at 731 (quoting *Penn Mut. Life Ins. Co. v. Berck*, No. DKC 09-0578, 2010 WL 3294309, at *3) (D. Md. Aug. 20, 2010) (alterations in original)). In light of this balance, the movant bears "a high standard of proof," *Franklin v. Clark*, 454 F. Supp. 2d 356, 364 (D. Md. 2006), to demonstrate that the attorney has violated "a rule of professional conduct that requires disqualification," *Jarallah*, 123 F. Supp. 3d at 732; *see also* Loc. R. 704 (making applicable the Maryland Lawyer's Rules of Professional Conduct (MLRPC) established by the Maryland Court of Appeals).

### Discussion

DSS moves for Davis to be disqualified pursuant to MLRPC 1.9, which governs an attorney's obligation to a former client; MLRPC 1.7, which addresses conflicts of interest as they pertain to current clients; and MLRPC 3.7, which restricts a lawyer's ability to serve as a witness in his client's case. Resp't's Mem. 3–4; Resp't's Reply 7–8.

## MLRPC 1.9

MLRPC 1.9 prohibits an attorney from representing a client "in the same or a substantially related matter" in which she has represented a former client, if the current and former clients' interests are "materially adverse," absent informed consent from the former client. MLRPC 1.9(a). For MLRPC 1.9 to come into play in this case, Davis must have represented DSS.

> The Maryland Court of Appeals has "acknowledge[d] that determining 'what constitutes an attorney-client relationship is a rather elusive concept.'" *Attorney Grievance Comm'n v. Shoup*, 979 A.2d 120, 135 (Md. 2009) (quoting *Attorney Grievance Comm'n v. Shaw*, 732 A.2d 876, 883 (Md. 1999)) Such a relationship may arise through an explicit agreement or "by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations." *Attorney Grievance Comm'n v. Brooke*, 821 A.2d 414, 425 (Md. 2003).

*Penn. Nat'l Mut. Cas. Ins. Co. v. Perlberg*, 819 F. Supp. 2d 449, 453–54 (D. Md. 2011).

DSS admits in its Motion that Davis represented DSS-Integrity—a separate and distinct corporate entity from DSS—during the 2013 bid protest. Respt't's Mot. ¶ 8 ("In a filing dated December 31, 2013, current counsel for [Integrity] represented DSS-[Integrity] in its protest and challenge of the contract award . . . ."). This is confirmed by a billing statement titled "FOR PROFESSIONAL LEGAL SERVICES RENDERED (DSS-Integrity GAO Protest) December 1, 2013 – December 31, 2013" that Davis submitted to the parties. Billing Statement, Pet'r's Opp'n Ex. 4, ECF No. 22-1. In its Reply, DSS appears to argue that Davis performed the 2013 work on behalf of DSS, not DSS-Integrity, because the billing statement was addressed to DSS. Resp't's Reply 2. As DSS-Integrity was a joint venture between DSS and Integrity, I do not find it at all inconsistent that Davis performed work on behalf of the joint venture while charging each of the joint venture's members for the work performed. It does not necessarily follow that DSS

4

retained Davis's services just because the company paid Davis for her work on DSS-Integrity's behalf.

Notwithstanding its admission that Davis represented DSS-Integrity rather than DSS, the company at various points in its filings nevertheless insists that Davis created an "appearance" or left the "impression" that she was representing the company. Resp't's Mot. ¶ 19 ("Current counsel for [Integrity] gave DSS **the impression** that counsel was representing **both** [Integrity] and DSS simultaneously during the period from about August, 2012 to no later than March 25, 2016 . . . ."); Resp't's Mem. 2 ("[Integrity]'s current counsel, Janice Davis, Esquire, of the law firm of Davis & Steele, appeared to represent both DSS and [Integrity] and handle all of their legal work."); Resp't's Reply 2 ("[DSS President] Dwayne Holmes reasonably believed that Davis was representing both companies [DSS and Integrity] because he thought she had been representing them in their collaboration and joint venture undertaking to obtain contracts, from August, 2012 through March 25, 2016."). Beyond Davis's representation of DSS-Integrity in its bid protest, DSS provides no explanation for what gave it the impression that Davis was the company's lawyer. DSS also states that Davis "reviewed [the] Mentor/Protégé Agreement for DSS and INC," Resp't's Mot. ¶4, and that "a reasonable inferential conclusion can be drawn that during the period August, 2012 through March, 2016, [Davis] reviewed, participated in the drafting of, or otherwise advised both parties in matters pertaining to contracts, for example the so-called Teaming Agreement," Respt't's Reply 7. Both Integrity CEO Antoninus Hines and Davis dispute that she played any role in drafting contracts between the two parties, Hines Decl. ¶ 8; Davis Decl. ¶¶ 3–4, 7–8, and DSS provides no evidence in support of its allegation such as billing statements or communications between DSS and Davis regarding the contracts.

5

As there is no evidence that Davis ever represented DSS, no conflict exists under MLRPC 1.9.

## MLRPC 1.7

MLRPC 1.7 prohibits a lawyer from representing a client where "a significant risk" exists that representation of the client "will be materially limited by the attorney's responsibilities to another client, a former client or a third person or by a personal interest of the attorney," absent informed consent from both affected parties. MLRPC 1.7(a)(2). DSS argues that Davis's representation of DSS creates a significant risk of materially limited representation by analogizing her representation of Integrity after having represented DSS-Integrity in its bid protest to a case in which a lawyer represented two spouses in a tort lawsuit arising out of an auto accident and also represented one spouse in a lawsuit against the other spouse related to the same accident. Resp't's Reply 3–4 (discussing *Attorney Grievance Comm'n*, 107 A.3d 1150, 1163 (Md. 2015)). While it is not difficult to discern a significant risk of materially limited representation where a lawyer represents an individual as a plaintiff in one lawsuit and sues the same individual in another lawsuit arising out of the same set of facts, the risk is not so obvious here. DSS does not explain how Davis's representation of DSS-Integrity in a bid protest materially limits its representation of Integrity in a breach-of-contract dispute with DSS. Because DSS has not established that a significant risk of materially limited representation exists, there is no basis for disqualifying Davis under MLRPC 1.7.

## MLRPC 3.7

MLRPC 3.7 prohibits an attorney from "act[ing] as an advocate at a trial in which the attorney is likely to be a necessary witness," except under limited circumstances. MLRPC 3.7(a). DSS did not even advance an argument addressing MLRPC 3.7 in its Memorandum in

support of its Motion, and its Reply brief merely states that "given current counsel's Declarations and other statements made in support of her and her client's positions, it appears that current counsel would be in a position to violate MLRPC [3.7] if this case proceeds to trial." Resp't's Reply 7. This conclusory and speculative statement does not provide a basis for disqualification. And, even if it did, "[a]n attorney may act as advocate in a trial in which another attorney in the attorney's firm is likely to be called a witness unless precluded from doing so" by either MLRPC 1.7 or 1.9. MLRPC 3.7(b). In the unlikely event that this case proceeds to trial, another attorney at Davis's firm could serve as trial advocate for Integrity should it appear at that time that Davis will be called as a witness.

## Conclusion

DSS has failed to put forth any basis for disqualifying Davis under MLRPC 1.7, 1.9, or 3.7. I will therefore deny its Motion, and Integrity shall file it Motion to Confirm Arbitration Award.

## ORDER

Accordingly, for the reasons stated, it is this 29th day of June, 2017, hereby ORDERED that:

1. Respondent DSS Services Inc.'s Motion to Disqualify Counsel, ECF No. 21, IS DENIED;

2. Petitioner Integrity National Corporation, Inc. SHALL FILE its Motion to Confirm Arbitration Award, and briefing SHALL PROCEED in accordance with Loc. R. 105.2 (D. Md.).

/S/
Paul W. Grimm
United States District Judge

jlb